# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SALLY DEUPREE, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 15-CV-0467-CVE-FHM |
| ) | |
| DEBBIE ALDRIDGE, ) | |
| ) | |
| Respondent. ) | |

## OPINION AND ORDER

Before the Court is the 28 U.S.C. § 2254 petition for writ of habeas corpus (Dkt. # 1) filed by petitioner Sally Deupree, a state inmate appearing pro se. Petitioner challenges the judgment and sentence entered against her in the District Court of Tulsa County, Case No. CF-2012-4445. Respondent filed a response in opposition to the petition (Dkt. # 6), and provided the state court records (Dkt. ## 6, 7, 8) necessary to adjudicate petitioner's claims. Petitioner filed a reply (Dkt. # 9). For the reasons discussed below, the Court denies the petition for a writ of habeas corpus.

## I.

In November 2012, the State filed a second amended information charging petitioner, in the District Court of Tulsa County, Case No. CF-2012-4445, with attempting to procure the participation of a minor in child pornography, in violation of OKLA. STAT. tit. 21, § 1021.2 (Count 9), and possessing child pornography, in violation of OKLA. STAT. tit. 21, § 1021.2 (Count 14). Dkt. # 7-16, at 94-95.[1] In the same information the State charged Ricky Lewis and Brittiny Dick, with

---

[1] The State originally charged petitioner only with the offense listed in Count 9. Dkt. # 7-16, at 51-53. Following a preliminary hearing on October 31, 2012, the State filed the second amended information to add Count 14. Id. at 94-95; see also Dkt. # 7-1, Prelim. Hr'g Tr., at 155, 187.

eight counts and four counts, respectively, relating to the procurement, production, distribution and possession of child pornography. Id. at 92-95. Before trial, Lewis and Dick pleaded guilty to their respective charges. Dkt. # 7-16, at 5-8. Petitioner's case was tried to a jury in September 2013. Dkt. # 7-16, at 40. The following facts were developed at trial.

In September 2012, Heather and Kendall Moore contacted Tulsa Police Officer Anthony First to report concerns they had about text messages they received from a person they met through the Internet. Dkt. # 7-9, at 7-11. The Moores told Officer First they were "swingers and . . . had posted an ad[vertisement] on craigslist looking for like-minded people." Id. at 9. The Moores became concerned when they received text messages from an individual who "started asking questions about having sex with children." Id. at 9-11. On further investigation, Officer First identified Ricky Lewis as the individual who sent the text messages to the Moores. Id. at 12-14, 16.

Danielle Bishop, a detective with the Child Crisis Unit, continued the investigation and ultimately obtained warrants to search Lewis's home and petitioner's home, and to seize their respective electronic devices. Dkt. # 7-9, at 245, 256-59; Dkt. # 7-10, at 17-18. Law enforcement officers seized three phones, an iPad, and a laptop from Lewis's home and seized a desktop computer, a laptop, and an iPhone from petitioner's home. Dkt. # 7-9, at 259-62; Dkt, # 7-10, at 18. Bishop turned the items over to Corporal Richard Coleman, a detective with the Cyber Crimes squad, for forensic examination. Dkt. # 7-9, at 20, 41-42, 259-62; Dkt. # 7-10, at 18-19.

On Lewis's laptop, Coleman discovered "over a hundred" images of children "in sexually explicit poses." Dkt. # 7-9, at 47-48. On petitioner's laptop, Coleman found four photographs of petitioner's two-year-old granddaughter, I.S., standing naked beside a swimming pool. Dkt. # 7-9,

2

at 17-18, 70-71, 125-26; State's Exhibits 21-25. Coleman described one photograph as a "full frontal shot." Dkt. # 7-9, at 71.

On one of Lewis's phones, Coleman found text-message conversations between Lewis and petitioner on four separate dates discussing taking photographs of children and performing sexual acts with a child. Id. at 48-51, 62; Dkt. # 7-11, at 5-11 (State's Exhibit 4). During a conversation on October 17, 2011, petitioner discussed moving back to Tulsa if she could find a job. Dkt. # 7-9, at 65-67; Dkt. # 7-11, at 5. After she suggested she could work as a prostitute or drug dealer, petitioner stated "I'd work at a daycare but you'd show up there everyday, lol, cracking myself up[.]" Dkt. # 7-11, at 5. Lewis responded that he would "just have [petitioner] take pics for [him]." Id. at 6. Petitioner replied that she could add "porn selling" to her list of job prospects. Id. In two separate text conversations with petitioner, on January 5, 2012, and May 4, 2012, Lewis expressed his desire to sexually molest petitioner's two-year-old granddaughter, I.S. Id. at 7, 10. During a text conversation on April 14, 2012, petitioner told Lewis that she met a "27-year-old chick" on a website who "started talking about children and children being involved etc." Id. at 9. Petitioner described her conversation with the 27-year-old as "very hot." Id.

Coleman testified he found screenshots on petitioner's laptop of two conversations she had with a woman identified only as "Ima27" or "Imma27." Dkt. # 7-9, at 71; Dkt. # 7-11, at 47-58 (State's Exhibit 5). During both conversations, on April 14 and April 16, 2012, the women discussed, in graphic terms, performing sexual acts with Imma27's children. Dkt. # 7-11, at 47-58. During the first conversation, petitioner told Imma27 that she had a male friend who was interested in young girls. Id. at 47. Petitioner also requested "pics" of Imma27's children and asked whether

Imma27 would be interested in having petitioner's "friend" join them. Id. at 50. Imma27 responded that she "share[s] her kids with females only." Id.

On Lewis's phone, Coleman also found evidence of temporally overlapping but independent text-message conversations between petitioner and Lewis and between Lewis and Dick that occurred on May 7, 2012. In graphic detail, Lewis and Dick discussed performing sexual acts with each other, with Dick's two-year-old daughter, D.D., with Lewis's 8-year-old son, A.A, and with Lewis's dog, Luke. Dkt. # 7-9, a 81-94; Dkt. # 7-11, at 12-46. While Lewis continued his conversation with Dick, petitioner sent Lewis a text about a gift card. Dkt. # 7-11, at 31. Lewis asked petitioner if they could go get a new phone and promised to send petitioner "dirty pictures." Id. at 33. After repeated requests from Lewis, Dick took and sent Lewis three photographs of D.D. and two of herself. Id. at 12, 22, 31, 34-35. Lewis ultimately forwarded those photographs to petitioner. Id. at 96-100. Coleman described those photographs as depicting (1) D.D. in panties, (2) D.D. naked and standing up, (3) D.D. lying naked on her back with her knees spread apart to expose her vagina, (4) a clothed adult female, and (5) an adult female naked from the chin to the waist. Id. at 96-100, 105-06; State's Exhibits 7, 8, 10, 11, 12. Lewis also sent petitioner a photograph of Luke, Lewis's dog, licking Lewis's exposed genitals. Id. at 100; State's Exhibit 9.

In conjunction with sending these photographs to petitioner, Lewis told petitioner about the conversation he was having with Dick. Using explicit language, he told petitioner that Dick wanted him to perform oral sex on D.D. Dkt. # 7-11, at 33. Petitioner replied, "So you have a friend other than me that knows about you? You told her you wanted to fuck her??" Id. at 33-34. Petitioner also sought more details:

4

| | |
|---|---|
| Petitioner: | So you showered with them, fucked the mom and who peed on you? |
| Lewis: | No haven't done anything yet. That's what she was asking me. I want her dau [sic] to pee on me. |
| Petitioner: | So your reference to tonight is that tonight? |
| Lewis: | When they are free. Doubt it's today |
| Petitioner: | Can you tape it and send it to me? |
| Lewis: | Yea I'll record it if it happens for sure. Will be hot |
| Lewis: | Then u can cum while u watch it |
| Petitioner: | :) |

Dkt. # 7-11, at 36-37. In text messages that appear to refer to the nude photographs of D.D. and Dick, petitioner told Lewis she would like to watch him perform oral sex on D.D., stated that Dick had "nice tits," and asked Lewis if he planned to use a condom. Id. at 39.

Lewis, who was incarcerated at the time of trial, testified that he never perpetrated any sexual acts upon his son, A.A., but admitted that he told people through text messages that he had done so. Dkt. # 7-9, at 160-61, 167. He also admitted that he talked about involving his son in sexual acts with other individuals, specifically during his May 7, 2012, text conversation with Dick. Id. at 160-61, 169-72. Lewis identified two photographs that he had taken of his son in the bathtub and described one photograph as focusing on his son's penis. Id. at 162; State's Exhibits 28, 29. Lewis testified that he discussed these photographs with Dick during their text conversation. Id. at 168.

Lewis testified that he met petitioner through craigslist, and they had a brief sexual relationship. Dkt. # 7-9, at 173. They remained friends thereafter, taking vacations together and going shopping. Id. at 173-74. He testified he met petitioner's two-year-old granddaughter, I.S., about six months into his relationship with petitioner, and that he had seen I.S. on about five occasions with petitioner. Id. at 174-76. After Lewis testified that he could not recall sending any text messages about I.S., the prosecutor showed him copies of the text messages retrieved from his phone. Id. at 176-788. Lewis then testified he stated in a text message to Kendall Moore that he had

5

oral sex with a two-year-old girl. Id. at 179-80. Lewis further testified that he sent a text message to Moore stating, "It was my friend's granddaughter and she ate my asshole as I ate her granddaughter's pussy." Id. at 181. Lewis testified that his statements to Moore were lies, but admitted that this latter message referred to petitioner and. I.S. Id. at 180-81.

Lewis testified that petitioner knew he was addicted to child pornography and that on one occasion he and petitioner watched a video of children performing sexual acts. Dkt. # 7-9, at 182-85. He also testified that he might have talked to petitioner about reaching out to other people about having sexual intercourse with children. Id. at 184-86. More specifically, he testified he told petitioner that he had talked to the Moores about his son having sexual intercourse with the Moores' infant daughter. Dkt. # 7-9, at 186-89. Lewis also testified that he recalled petitioner telling him about the 27-year-old she met on a dating website and about the conversation they had about having sex with children. Id. at 190-94. After refreshing his memory, Lewis testified that petitioner asked him to record himself performing sexual acts with Dick and D.D. Dkt. # 7-9, at 197-98. Lewis also admitted that when he suggested petitioner could use the video for her own sexual gratification she responded with "[a] smiley face." Id. at 204-05.

On cross-examination, Lewis testified his conversation with Dick was "fantasy talk" and that he never intended to go through with any of the acts they discussed on May 7, 2012. Id. at 223. He also testified that petitioner told him the next day that he needed to get help for his addiction. Id. at 224. Lewis testified that he never acted on his fantasies by touching a child, and that he believed petitioner would not remain his friend if she knew that he had touched a child. Id. at 228-30, 232-33, 238-39.

6

Detective Bishop testified that she spoke with petitioner at petitioner's home in Glenpool on October 3, 2012. Dkt. # 7-9, at 265-66. Bishop recorded the conversation, and that recording was entered into evidence as State's Exhibit 30 and played for the jury. Dkt. # 7-9, at 269-70; Dkt. # 7-10, at 13. Petitioner initially denied knowledge of Lewis's sexual activity with his dog, Luke. Dkt. # 7-10 at 13-14. She later admitted receiving a photograph from Lewis that depicted Luke licking Lewis's genitalia. Id. at 14. Petitioner initially told Bishop she recalled receiving a photograph of Dick from Lewis, but did not recall receiving any photographs of D.D. Id. at 15-16. When Bishop confronted petitioner with a photographs of D.D. standing naked and lying down with her legs spread, petitioner admitted receiving both photographs from Lewis. Id. at 16. When Bishop asked petitioner if Lewis had shown her photographs of his son, A.A., petitioner told Bishop that Lewis had mentioned having "bathtub pictures" of A.A., but petitioner denied having seen those photographs. Id. at 16-17. The State showed Bishop the previously admitted photographs of A.A. in the bathtub, one of which focused solely on A.A.'s genitalia. Id. at 17; State's Exhibits 27, 28. Bishop testified, based on her training and experience, that neither photograph could be "classif[ied] as normal bathtub photos that a parent would take of a child." Dkt. # 7-10, at 17.

On cross-examination, Bishop testified that during her conversation with petitioner, petitioner stated several times that she did not believe that petitioner would either follow through with making a videotape of D.D. or act out on his addiction to pornography. Id. at 38, 42.

At the end of the four-day trial, the jury found petitioner guilty as charged. Id. at 203-06. Consistent with the jury's sentencing recommendations, the trial court imposed a 10-year prison sentence and $12,500 fine as to Count 9, imposed a 15-year prison sentence and $25,000 fine as to

7

Count 14, and ordered the sentences to be served consecutively. Id.; Dkt. # 7-15, Sent. Hr'g Tr., at 23-24.

Petitioner, represented by counsel, filed a direct appeal with the Oklahoma Court of Criminal Appeals (OCCA), raising 11 propositions of error. Dkt. # 6-2, at 2-3. By unpublished summary opinion filed March 2, 2015, in Case No. F-2013-1010, the OCCA rejected each proposition on the merits and affirmed petitioner's convictions and sentences. Dkt. # 6-4, *Deupree v. State*, No. F-2013-1010 (Okla. Crim. App. 2015) (unpublished) (hereafter, "OCCA Op."), at 2-8. Petitioner did not file a petition for writ of certiorari in the United States Supreme Court or seek post-conviction relief in state court. Dkt. # 1, at 2; Dkt. # 6, at 2.

Petitioner filed the instant habeas petition on August 18, 2015. Dkt. # 1. She seeks federal habeas relief on five grounds:

> Ground 1: Petitioner was deprived of a fair trial and due process when the court admitted evidence of other crimes/bad acts of petitioner as well as bad acts that pertained solely to co-defendants.
>
> Ground 2: Evidence was insufficient to support conviction for possession of child pornography.
>
> Ground 3: The Information was insufficient to apprise petitioner of what she was required to defend in violation of due process.
>
> Ground 4: Petitioner was deprived of due process when [s]he was prosecuted under general law of manufacturing and distributing child pornography rather than specific law of possession of child pornography.
>
> Ground 5: Evidence was insufficient to support a conviction for attempting to procure a child to participate in child pornography.

Dkt. # 1, at 6, 11, 13, 15, 17.

Respondent contends petitioner is not entitled to habeas relief because Grounds 1, 3 and 4 allege errors of state law rather than cognizable federal habeas claims. Dkt. # 6, at 6. Alternatively, respondent argues that these alleged errors did not render petitioner's trial fundamentally unfair. Id. at 10, 17, 23, 27. Respondent contends that habeas relief as to Grounds 2 and 5 is barred under 28 U.S.C. § 2254(d). Id. at 18, 31.

## II.

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs this Court's review of petitioner's claims. 28 U.S.C. § 2254.[2] Under the AEDPA, a federal court may grant habeas relief to a state prisoner "only on the ground that [s]he is in custody in violation of the Constitution or laws or treaties of the United States." Id. § 2254(a); see also Wilson v. Corcoran, 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts."). Further, because the OCCA decided each of petitioner's habeas claims on the merits, this Court may not grant relief unless petitioner demonstrates that the OCCA's adjudication of those claims either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," id. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2).

As used in § 2254(d)(1), the phrase "clearly established Federal law" means "the governing legal principle or principles" stated in "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Lockyer v. Andrade, 538 U.S.

---

[2]  Respondent concedes, and the Court finds, that petitioner timely filed her habeas petition, see 28 U.S.C. § 2244(d)(1)(A), and exhausted each of her habeas claims by presenting them to the OCCA on direct appeal, see id. § 2254(b)(1)(A). Dkt. # 6, at 2.

9

63, 71-72 (2003) (quoting Terry Williams v. Taylor, 529 U.S. 362, 412 (2000)). "The absence of clearly established federal law is dispositive under § 2254(d)(1)." House v. Hatch, 527 F.3d 1010, 1018 (10th Cir. 2008). This means that, in the absence of a controlling Supreme Court decision, i.e., "clearly established Federal law," a federal court may not "ask whether the state court decision is either contrary to or an unreasonable application of such law." Id.

If federal law was clearly established at the time of the state court's decision, a federal court must consider whether the petitioner has made the requisite showings to satisfy § 2254(d)'s rigorous standards. "To determine whether a particular decision is 'contrary to' then-established law, a federal court must consider whether the decision 'applies a rule that contradicts [such] law' and how the decision 'confronts [the] set of facts' that were before the state court." Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (alterations in original) (quoting Terry Williams, 529 U.S. at 405, 406). When the state court's decision "'identifies the correct governing legal principle' in existence at the time, a federal court must assess whether the decision 'unreasonably applies that principle to the facts of the prisoner's case.'" Id. (quoting Terry Williams, 529 U.S. at 413). An "unreasonable application of" clearly established federal law under § 2254(d)(1) "must be 'objectively unreasonable,' not merely wrong; even clear error will not suffice." White v. Woodall, 572 U.S. 415, 419 (2014) (quoting Lockyer, 538 U.S. at 75-76). Likewise, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, 301 (2010). In addition, the federal court must presume the correctness of the state court's factual findings unless the petitioner rebuts that presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

The AEDPA "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 571 U.S. 12, 19 (2013). Ultimately, the "AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" Id. at 19-20 (alterations in original) (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)). This standard "is difficult to meet . . . because it was meant to be" to ensure that "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Richter, 562 U.S. at 102-03 (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

### III.

**1.    Admission of other crimes/bad acts evidence (Ground 1)**

In her first claim for relief, petitioner alleges she was deprived of a fair trial and denied due process because the trial court erroneously admitted evidence of other crimes and bad acts. Dkt. # 1, at 6-10. She specifically challenges the admission of (1) "over 300 vulgar and graphic texts between" Lewis and Dick, (2) "over 100 images of child pornography found on Lewis and Dick's electronic devices, (3) her conversation with "Ima27," and (4) text messages Lewis sent to the Moores. Id. Petitioner argues that this evidence was more prejudicial than probative given that she was charged with only two crimes stemming from one discrete exchange of 32 text messages with Lewis on May 7, 2012, and her possession of four photographs of her two-year-old granddaughter standing naked by a pool. Id. at 6.

Petitioner challenged the admission of this same evidence on direct appeal, and the OCCA affirmed the trial court's determination that the evidence was admissible under state law. Dkt. # 6-4, OCCA Op., at 2-3. First, it reasoned that the "challenged evidence was inextricably intertwined with the charged offenses and necessary to give the jury context," thus, it was admissible under the res gestae exception. Id. at 3. Second, it reasoned that the evidence was admissible under OKLA. STAT. tit. 12, § 2404(B)[3] because it was "probative of [petitioner's] motive and knowledge and refuted her claims that her conversations involving sex with children were nothing but fantasy and that the nude photo of her granddaughter was an innocent family photo." Id. The OCCA also found that the evidence "although graphic and vulgar, was not substantially more prejudicial than probative." Id. Petitioner raised a due process claim in state court, but the OCCA did not expressly address it. Dkt. # 6-2, at 26; Dkt. # 6-4, OCCA Op., at 2-3.

Determining whether evidence was properly admitted under state law "is no part of a federal court's habeas review of a state conviction." Estelle v. McGuire, 502 U.S. 62, 67 (1991). As a result, federal habeas courts "will not disturb a state court's admission of evidence of prior crimes, wrongs or acts unless the probative value of such evidence is so greatly outweighed by the prejudice flowing from its admission that the admission denies [the petitioner] due process of law." Knighton v. Mullin, 293 F.3d 1165, 1171 (10th Cir. 2002) (quoting Duvall v. Reynolds, 139 F.3d 768, 787 (10th Cir. 1998)). The Court must determine whether, when "considered in light of the entire record, [the admission of other crimes evidence] resulted in a fundamentally unfair trial." Id.

---

[3] Under Oklahoma law, other crimes evidence may be admissible under a res gestae exception or under § 2404(B). Baird v. State, 400 P.3d 875, 885 (Okla. Crim. App. 2016). Section 2404(B) provides that evidence of other crimes, wrongs, or acts may be admissible to show motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. OKLA. STAT. tit. 12, § 2404(B).

"[B]ecause a fundamental-fairness analysis is not subject to clearly definable legal elements," the federal habeas court must "tread gingerly" and exercise "considerable self-restraint." Duckett v. Mullin, 306 F.3d 982, 999 (10th Cir. 2002) (quoting United States v. Rivera, 900 F.2d 1462, 1477 (10th Cir. 1990) (en banc)).

Applying these standards, the Court finds that the admission of the challenged evidence did not render the trial fundamentally unfair. As the OCCA acknowledged, much of the evidence in this case was "graphic and vulgar." Dkt. # 6-4 at 3. But that stems from the nature of the petitioner's crimes, not the admission of evidence relevant to those crimes. Having reviewed the state-court record, the Court cannot find that the probative value of the challenged evidence was "so greatly outweighed by the prejudice flowing from its admission that the admission" deprived petitioner of due process. Thus, the Court denies habeas relief as to Ground 1.

**2.      Insufficient evidence (Grounds 2 and 5)**

Next, petitioner claims the evidence presented at trial is insufficient to support either of her convictions. Dkt. # 1, at 11-12, 17-18.

Under the Due Process Clause of the Fourteenth Amendment, a criminal defendant cannot be convicted of a crime unless the state proves, beyond a reasonable doubt, every essential element of the crime charged. Jackson v. Virginia, 443 U.S. 307, 316 (1979); In re Winship, 397 U.S. 358, 364 (1970). Under Jackson, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319. "Jackson claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." Coleman v. Johnson, 566 U.S. 650, 651 (2012) (per curiam).

13

> First, on direct appeal, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'"

Id. (internal citations omitted) (quoting Cavazos v. Smith, 565 U.S. 1, 2 (2011)); see also id. at 656 ("[T]he only question under Jackson is whether [the jury's] finding was so insupportable as to fall below the threshold of bare rationality."); Grubbs v. Hannigan, 982 F.2d 1483, 1487 (10th Cir. 1993) (noting that Jackson "standard requires [reviewing court] to accept the jury's resolution of the evidence as long as it is within the bounds of reason"). In applying the Jackson standard on federal habeas review, the Court looks to state law to determine the substantive elements of the crime. Johnson, 566 U.S. at 655. "[B]ut the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." Id.

### a. Possession of child pornography

In Ground 2, petitioner challenges her conviction for possession of child pornography, in violation of OKLA. STAT. tit. 21, § 1021.2. Dkt. # 1, at 11-12. To obtain this conviction, the State had to prove, beyond a reasonable doubt, that petitioner (1) knowingly, (2) possessed, (3) child pornography. See Okla. Jury Instr. No. 4-135C, OUJI-CR (2d). Oklahoma defines "child pornography" as "[a]ny photograph [of] a child under the age of 18 years in which there is a lewd exhibition of the uncovered genitals and the breasts of a female minor where lewd exhibition has the purpose of sexual stimulation of the viewer." Okla. Jury Instr. No. 4-139, OUJI-CR (2d).

It is undisputed that petitioner knowingly possessed a photograph of her two-year-old granddaughter standing naked by a swimming pool. Dkt. # 7-9 at 71. As she did on direct appeal,

petitioner argues that the State failed to prove that photograph depicted lewd exhibition for the purpose of sexual stimulation. Dkt. # 1, at 11-12. The OCCA rejected petitioner's argument. In doing so, the OCCA applied the Jackson standard[4] and concluded,

> Any rational trier of fact could find beyond a reasonable doubt from the trial evidence that the nude photograph of [petitioner's] granddaughter was child pornography and that the lewd exhibition was for the sexual stimulation of the viewer."

Dkt. # 6-4, OCCA Op., at 4.

The OCCA's determination that the photograph is child pornography is a factual finding. See Nelson v. Roberts, No. 17-3005, 2018 WL 3301444, at *4 (10th Cir. July 5, 2018) (unpublished)[5] ("The determination [of] whether an image is child pornography is a question of fact."); see also United States v. Dost, 575 F.2d 1303, 1304 (10th Cir. 1978) (treating as a jury question issue whether photographs were obscene). And petitioner presents no clear and convincing evidence to rebut the presumption of correctness that attaches to that finding. See 28 U.S.C. § 2254(e)(1); Smith v. Duckworth, 824 F.3d 1233, 1241 (10th Cir. 2016) ("[A] state court's factual findings are presumed correct, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence."). Moreover, on the record presented, petitioner fails to show that

---

[4] The OCCA did not cite Jackson; instead, it cited its own precedent recognizing Jackson as the controlling legal principle. Dkt. # 6-4, OCCA Op., at 4 ; see Logsdon v. State, 231 P.3d 1156, 1161 (Okla. Crim. App. 2010) (discussing and applying Jackson standard). Even if the OCCA had not cited Logsdon, the OCCA's decision would still be entitled to AEDPA deference. See Miller v. Mullin, 354 F.3d 1288, 1292-93 (10th Cir. 2004) (applying § 2254(d) "notwithstanding the [OCCA's] failure to cite or discuss federal case law").

[5] The Court cites Nelson for its persuasive value. See FED. R. APP. P. 32.1(a); 10th Cir. R. 32.1(A).

the OCCA's decision rejecting her sufficiency challenge was objectively unreasonable. Thus, the Court denies habeas relief as to Ground 2.

### b. Attempting to procure a child to participate in child pornography

In Ground 5, petitioner challenges the sufficiency of the evidence to support her conviction for attempting to procure the participation of a minor in child pornography, in violation of OKLA. STAT. tit. 21, § 1021.2. Dkt. # 1, at 17-18. To obtain this conviction, the State had to prove, beyond a reasonable doubt, that petitioner (1) formed the specific intent to commit the crime of attempting to procure the participation of a minor in child pornography, and (2) either performed a perpetrating act toward committing that crime but such act failed to constitute the commission of that crime, or purposefully engaged in conduct which would have constituted the crime if the attendant circumstances were as the defendant believed them to be, or when causing a particular result in an element of the crime, did anything with the purpose of causing or with the belief that it would cause such result, without further conduct on the part of the defendant. Okla. Jury Instr. No. 2-11, OUJI-CR (2000 Supp.) In addition, the State had to prove, beyond a reasonable doubt, that petitioner (1) knowingly, (2) procured or caused the participation of, (3) a child under the age of 18, (4) in any child pornography. Okla. Jury Instr. No. 4-135B, OUJI-CR (2d).

As she did on direct appeal, petitioner argues the "[n]ecessary element of Petitioner, herself, procuring the child, is absent." Dkt. # 1, at 18. Applying Jackson, the OCCA rejected petitioner's claim, reasoning,

> Any rational trier of fact could find beyond a reasonable doubt from the trial evidence that [petitioner's] request of her co-defendant to record himself with D.D. would have caused or brought about D.D.'s participation in child pornography.

Dkt. # 6-4, OCCA Op., at 6.

16

As previously noted, this Court has reviewed the evidence presented at trial. Having done so, this Court cannot say that it was objectively unreasonable for the OCCA's to decide that the jury's verdict was within the bounds of reason. Thus, the Court also denies habeas relief as to Ground 5.

**3.      Sufficiency of the charging document (Ground 3)**

Next, petitioner claims the second amended information was not sufficiently specific to apprise her of the charges against her, thus violating her right to due process. Dkt. # 1 at 13. She specifically contends the State failed to include all the elements of possessing child pornography by omitting the phrases "lewd exhibition" and "for the purpose of sexual stimulation." Id. The OCCA rejected petitioner's claim, stating,

> Consistent with constitutional requirements, this [c]ourt asks whether the challenged Information gave the defendant notice of the charges against her and apprised her of what she must defend against at trial. See Parker v. State, 1996 OK CR 19, ¶ 24, 917 P.2d 980, 986. Such a determination will be made on a case-by-case basis and the [c]ourt will look to the "four corners" of the Information together with all material that was made available to a defendant at preliminary hearing or through discovery. Id. After reviewing the record, we find [petitioner] was provided adequate notice sufficient to satisfy due process based on the Information and material provided during discovery and at preliminary hearing.

Dkt. # 6-4, OCCA Op., at 5.

"A challenge to the adequacy of the Information under Oklahoma law . . . is a question of state law, which [a federal habeas court] has no power to address." Sallahadin v. Gibson, 275 F.3d 1211, 1227 (10th Cir. 2002). Nonetheless, a federal court "may grant habeas relief if the state court error deprived the defendant of fundamental rights guaranteed by the Constitution." Id. Under clearly established federal law, a charging document "is sufficient if it [1] contains the elements of the offense charged and fairly informs a defendant of the charge against which [s]he must defend,

17

and [2] enables [her] to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974).

Because the OCCA identified the correct legal principle in rejecting petitioner's claim, she must show that the OCCA unreasonably applied that principle to the facts of her case. She fails to make that showing. As to the charge of possessing child pornography, the second amended information alleged that petitioner "did commit the crime of **POSSESSION OF CHILD PORNOGRAPHY**, a Felony, by willfully or maliciously possessing a photograph of a female child under 5 years of age with her breasts and genitalia exposed." Dkt. # 7-16, at 95. At the preliminary hearing, the State specifically sought to add this charge "for the photograph that was found on [petitioner's] computer as a result of the search warrant and is depicted in State's Exhibit Number 17." Dkt. # 7-1, Prelim. Hr'g Tr., at 155. Defense counsel specifically opposed the State's request to add the charge, arguing that the photograph contained no "lewd component" and that there was no evidence to support that petitioner possessed the photograph for "sexual stimulation of the viewer." Id. at 161-62. On this record, petitioner cannot show that it was objectively unreasonable for the OCCA to conclude that she was fairly apprised of the charges against her. Thus, the Court denies habeas relief as to Ground 3.

**4.     Charging decision (Ground 4)**

Finally, in Ground 4, petitioner claims her due process rights were violated when the State prosecuted her for possession of child pornography under OKLA. STAT. tit. 21, § 1021.2 rather than under what she claims is the "more specific statute" of OKLA. STAT. tit. 21, § 1024.2. Dkt. # 1, at 15-16. She contends the State "intentionally chose the harsher of the statutes which carried a longer prison sentence." Id. at 15. Citing State v. Haworth, 283 P.3d 311, 316 (Okla. Crim. App. 2012),

the OCCA rejected this claim. Dkt. # 6-4, OCCA Op., at 6. It reasoned that "[t]he decision under which criminal statute to prosecute when two statutes overlap rests within the sound discretion of the prosecutor." Id. It further concluded that the prosecutor "was well within her discretion to prosecute [petitioner] for possession of child pornography under 21 O.S. 2011, § 1021.2 rather than 21 O.S. 2011, § 1024.2." Id.

By applying Haworth, the OCCA identified the correct legal principle controlling this issue. Clearly established Supreme Court precedent gives prosecutors wide discretion to make charging decisions so long as that discretion is not exercised on an improper basis, such as race, religion, or some other arbitrary classification. Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978); Wayte v. United States, 470 U.S. 598, 608 (1985). And petitioner cannot show that the OCCA unreasonably applied this principle to the facts of her case. Nothing in the petition suggests that the prosecutor relied on an improper basis in making the challenged charging decision. At most, petitioner suggests the decision was motivated by the fact that § 1021.2 provided for a harsher penalty. Dkt. # 1, at 15. But even if this were true, it would not establish a constitutional violation. See United States v. Andersen, 940 F.2d 593, 596 (10th Cir. 1991) (noting that a prosecutor's charging decision "may be influenced by the penalties available upon conviction, but this fact, standing alone, does not give rise to a violation of the Equal Protection or Due Process Clause" (quoting United States v. Batchelder, 442 U.S.114, 125 (1979))). The Court therefore denies habeas relief as to Ground 4.

## *CONCLUSION*

After careful review of the record, the Court concludes that petitioner has not demonstrated that she is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2254(a). The Court therefore denies her petition for a writ of habeas corpus.

**Certificate of Appealability**

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A district court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the district court rejects a petitioner's constitutional claims on the merits, the petitioner must make this showing by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). For the reasons discussed in the analysis section of this opinion, the Court finds no reasonable jurists would debate the correctness of its assessment of petitioner's claims. The Court therefore denies a certificate of appealability.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The petition for a writ of habeas corpus (Dkt. # 1) is **denied**.

2. A certificate of appealability is **denied**.

3. A separate judgment shall be entered herewith.

**DATED** this 28th day of September, 2018.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE